**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEVIN ROLLAG,<br><br>                Plaintiff,<br><br>v.<br><br>COWEN INC., COWEN AND COMPANY, LLC, GAVIN O'REILLY and SCOTT LEMONE, in their individual and professional capacities,<br><br>                Defendants. | 1:20-cv-05138 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION

MORGAN, LEWIS & BOCKIUS LLP

Christopher A. Parlo
Thomas A. Linthorst
Jason J. Ranjo
101 Park Avenue
New York, NY 10178
(212) 309-6000
(212) 309-6001 (facsimile)

*ATTORNEYS FOR DEFENDANTS*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND AND PROCEDURAL HISTORY ....................................... 2

    A.   The Parties' Mutual Agreements To Arbitrate. .................................... 2

    B.   The Parties' Dispute And Plaintiff's Breach Of The Arbitration
         Agreements. ........................................................................................... 3

III.  ARGUMENT .................................................................................................. 4

    A.   The Federal Arbitration Act and Supreme Court Authority Require The
         Court To Enforce Plaintiff's Arbitration Agreements. ........................... 4

    B.   The Court Should Compel Arbitration Of Plaintiff's Claims. ............... 5

         1.   Plaintiff Entered Into Multiple Agreements With Cowen To
              Litigate Covered Claims In Arbitration. ..................................... 5

         2.   Plaintiff's Arbitration Agreements Cover The Causes of Action
              (i.e. Dispute) Alleged In The Complaint, All Of Which Are
              Arbitrable. ................................................................................... 7

         3.   Any Disputes Regarding The Arbitrability Of Plaintiff's Claims
              Are Delegated To The Arbitrator................................................. 8

    C.   The Court Should Stay These Proceedings Pending Arbitration......... 10

IV.   CONCLUSION............................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alderson v. DeVere USA, Inc.*,
   2018 WL 3756451 (S.D.N.Y. July 24, 2018) ...................................................................9

*Alliance Bernstein Investments Research & Mgmt., Inc. v. Schaffran*,
   445 F.3d 121 (2d Cir. 2006).........................................................................................9

*Am. Exp. Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013).................................................................................................4

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)......................................................................................................4

*Contec Corp. v. Remote Sol., Co.*,
   398 F.3d 205 (2d Cir. 2005)......................................................................................9, 10

*Daly v. Citigroup Inc.*,
   939 F.3d 415 (2d Cir. 2019)..........................................................................................7

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)....................................................................................................1, 7

*Etienne v. Barclays Bank*,
   No. 18-5168, 2019 WL 3325841 (S.D.N.Y. July 24, 2019).......................................6

*Gonder v. Dollar Tree Stores, Inc.*,
   144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015)................................................................6

*Guyden v. Aetna, Inc.*,
   544 F.3d 376 (2d Cir. 2008).........................................................................................4

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
   246 F.3d 219 (2d Cir. 2001).........................................................................................5

*Hawkins v. Toussaint Capital Partners, LLC*,
   2010 WL 2158332 (S.D.N.Y. May 27, 2010) ...........................................................7, 8

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   139 S. Ct. 524 (2019)....................................................................................................9

*Katz v. Cellco Partnership*,
   794 F.3d 341 (2d Cir. 2015).........................................................................................10

*Litvinov v. UnitedHealth Grp. Inc.*,
  No. 13-8541, 2014 WL 1054394 (S.D.N.Y. Mar. 11, 2014) .....................................................6

*Marciano v. DCH Auto Grp.*,
  14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) ............................................................................6

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995) ..............................................................................................................4

*Melchior v. N.Y. Life Ins. Co., et al.*,
  2019 WL 652557 (S.D.N.Y. Feb. 15, 2019) ..........................................................................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) .............................................................................................................4

*Nat'l Union Fire. Ins. Co. v. Belco Petroleum Corp.*,
  88 F.3d 129 (2d Cir. 1996) ..................................................................................................5

*Rollins v. Goldman Sachs & Co. LLC*,
  2019 WL 2754635 (S.D.N.Y. July 2, 2019) ...........................................................................8

*Rusciano v. Oppenheimer & Co., Inc.*,
  2014 WL 1677133 (S.D.N.Y. Apr. 25, 2014) .........................................................................8

*United Steelworks of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) .............................................................................................................4

**Statutes**

9 U.S.C. § 2 ..............................................................................................................................5

9 U.S.C. § 3 ............................................................................................................................10

9 U.S.C. § 4 ..............................................................................................................................5

I.      **INTRODUCTION**

Defendants Cowen Inc., Cowen and Company, LLC (together, "Cowen"), Gavin

O'Reilly, and Scott Lemone (collectively, "Defendants") respectfully move this Court for an

order: (1) compelling Plaintiff Kevin Rollag ("Plaintiff") to arbitrate the claims asserted in his

Complaint; and (2) staying this matter pending the conclusion of the arbitration.

In exchange for his employment with Cowen and significant compensation as an

investment banker, Plaintiff signed three separate agreements that each require him to arbitrate

the disputes he asserts in this action, and to not defame or disparage Defendants and other

Cowen employees.  Yet, in a clear and knowing breach of these agreements, Plaintiff filed this

court lawsuit and subsequently launched a publicity campaign to spread his false and defamatory

statements, including a press release by his attorney.  The Court should grant Defendants' motion

because, as set forth below, Plaintiff had clear contractual obligations to arbitrate the disputes

asserted in this case, which must be enforced.

Where a binding arbitration agreement has been formed covering the claims at issue, the

Federal Arbitration Act ("FAA")—which governs Plaintiff's arbitration agreements—mandates

that the claims be compelled to arbitration.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213,

218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district

court").  Nothing in the agreements Plaintiff signed allows him to pursue in court the claims that

he alleges in this action.  To the contrary, the agreements Plaintiff signed specifically address the

statutory employment-related claims and allegations he asserts here, and preclude him from

litigating these claims in court.

Accordingly, the Court should compel all of Plaintiff's claims to arbitration and stay this

action pending the completion of the arbitration.

II.     **BACKGROUND AND PROCEDURAL HISTORY**

A.      **The Parties' Mutual Agreements To Arbitrate.**

Plaintiff worked for Cowen and Company, LLC as an Investment Banker licensed and registered with the Financial Industry Regulatory Authority ("FINRA").  Dkt No. 1 ("Compl.") ¶ 16; Declaration of Rebecca McAdams ("McAdams Decl.") ¶¶ 3-4  In connection with his hiring and employment, Plaintiff signed several agreements that required Plaintiff and Cowen to resolve any claims arising out of or relating to Plaintiff's employment, or termination of employment, outside of court, in binding arbitration.  These agreements include:  (1) Plaintiff's offer letter dated April 13, 2018, attaching the Terms and Conditions of Employment ("T&C Agreement") between Cowen and Company, LLC and Plaintiff, that he signed on April 17, 2018; (2) the Restricted Stock Unit and Deferred Cash Award Agreement, dated February 20, 2019 ("2019 RSU Agreement"), between Cowen Inc. and Plaintiff, that he signed on April 15, 2019; and (3) the Restricted Stock Unit and Deferred Cash Award Agreement, dated February 19, 2020 ("2020 RSU Agreement"), between Cowen Inc. and Plaintiff, that he signed on April 26, 2020, (collectively, the "Agreements").  *See* McAdams Decl. ¶¶ 5-6 Exs. A-D.

By accepting his employment offer on April 17, 2018 and signing the T&C Agreement, Plaintiff agreed to be bound by its arbitration provision as a condition of his employment.  *Id.*, Ex. A, Ex. B ¶ 17.  The T&C Agreement provides, in relevant part:

> 17.     Arbitration.  Any disputes arising out of or relating to your employment or the termination of your employment **will be submitted to and resolved exclusively by Financial Industry Regulatory Association in accordance with its rules, unless you are not registered or are not subject to FINRA's jurisdiction, then by the American Arbitration Association ("AAA") pursuant to the AAA's Employment Arbitration Rules and Mediation Procedures**. . . . In agreeing to arbitrate your claims, you recognize that you are waiving your right to a trial in court and by a jury.  The arbitration award shall be binding upon you and the Company, and judgment upon the award may be entered in a court of competent jurisdiction.  **This arbitration provision applies to, but is not limited to, statutory discrimination, harassment, and retaliation claims**

**under federal, state and local law.**

*Id.*, Ex. B ¶ 17 (emphasis added).  The T&C Agreement excepts from its scope *only* the

following specific types of claims (which are inapplicable to the claims set forth in the

Complaint):

> . . . (a) a claim for injunctive relief permitted under these Terms and Conditions of
> Employment, for which jurisdiction shall be reserved in the federal and/or state
> courts in New York County, with the parties consenting to personal jurisdiction;
> (b) any claim arising under Sarbanes-Oxley; and (c) claims prohibited by law
> from being arbitrated.

*Id.*  Additionally, by signing and accepting award grants under the 2019 RSU Agreement and the

2020 RSU Agreement, Plaintiff agreed to be bound by those agreements, both of which contain

substantially identical arbitration agreements as that in the T&C Agreement, and which cover

"[a]ny and all disputes" between Plaintiff and Cowen arising out of those agreements or

Plaintiff's employment (and subject to the same very limited, and inapplicable here) exclusions.

*Id.*, Ex. C § 2.14, Ex. D § 2.14.

The Agreements further contain confidentiality and non-disparagement clauses that

prohibit Plaintiff from disclosing non-public information about Cowen's employees, business,

and clients, and from disparaging and defaming Cowen and its employees, both during and after

the termination of Plaintiff's employment.  *Id.*, Ex. B ¶ 10, Ex. C § 2.3(c)-(d), Ex. C § 2.3(c)-(d).

**B.      The Parties' Dispute And Plaintiff's Breach Of The Arbitration Agreements.**

Despite his three unambiguous arbitration agreements, on or about July 6, 2020, Plaintiff

filed this lawsuit, alleging eight Causes of Action for statutory employment-related claims under

federal and New York state and local law for FMLA retaliation, FMLA interference, parental

status discrimination, retaliation, and aiding and abetting violations of discrimination statutes.

*See* Dkt No. 1 ("Compl.") ¶¶ 164-202.  All of Plaintiff's claims are "statutory discrimination,

harassment, and retaliation claims under federal, state and local law," arising out of his

employment with Cowen. *Id*. As such they fall squarely within the scope of all three

Agreements' binding arbitration provisions. *See* McAdams Decl., Ex. B ¶ 17, Ex. C § 2.14, Ex.

D § 2.14. By pursuing his claims in court instead of in arbitration, Plaintiff has refused to abide

by and has breached each of the three Agreements.

III.   **ARGUMENT**

A.   **The Federal Arbitration Act and Supreme Court Authority Require The Court To Enforce Plaintiff's Arbitration Agreements.**

The Federal Arbitration Act ("FAA") sets forth a national and "liberal policy favoring

arbitration" and reinforces "the fundamental principle that arbitration is a matter of contract."

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The primary purpose of the FAA

is to "enforce private agreements into which parties [have] entered." *Mitsubishi Motors Corp. v.

Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985). To that end, the FAA requires

courts to "rigorously enforce agreements to arbitrate." *Id*. at 626; *Am. Exp. Co. v. Italian Colors

Rest.*, 133 S. Ct. 2304, 2309 (2013).

Moreover, any ambiguities or doubts as to the scope of an arbitration agreement must be

resolved in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S.

52, 62 (1995); *Mitsubishi Motors Corp.,* 473 U.S. at 626 ("questions of arbitrability must be

addressed with a healthy regard for the federal policy favoring arbitration"); *Guyden v. Aetna,

Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (the FAA embodies the "liberal federal policy favoring

arbitration agreements" and "establishes that, as a matter of federal law, any doubts concerning

the scope of arbitrable issues should be resolved in favor of arbitration"). The "presumption of

arbitrability" requires compelling arbitration unless it may be said with "positive assurance" that

the parties' agreement "is not susceptible of an interpretation that covers . . . the dispute."

*United Steelworks of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If a litigant in a court proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a judicial order compelling arbitration is mandatory – not discretionary. *See id.* ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court ***shall*** make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." (emphasis added)).

### B.   The Court Should Compel Arbitration Of Plaintiff's Claims.

The Second Circuit has instructed that, pursuant to the FAA:  "[w]hether a dispute is arbitrable comprises two questions: '(1) whether there exists a valid agreement to arbitrate . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quoting *Nat'l Union Fire. Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996)).  As set forth below, both of these criteria are easily satisfied.

#### 1.   Plaintiff Entered Into Multiple Agreements With Cowen To Litigate Covered Claims In Arbitration.

The FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Plaintiff unquestionably entered into such valid and enforceable agreements to arbitrate all of the claims asserted in the Complaint.

As described above, Plaintiff received an offer of employment with Cowen contingent upon his agreement to the T&C Agreement and its arbitration provision.  McAdams Decl., Exs.

-5-

A-B.  Plaintiff again entered into subsequent agreements to arbitrate with Cowen when he

accepted the award grants and signed the 2019 and 2020 RSU Agreements.  *Id.*, Exs. C-D.

Plaintiff therefore had adequate notice of, assented to, and became bound by, all three

Agreements.  *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014)

(holding that under New York law "parties are presumed to know the contents of the agreements

they have signed") (citation omitted); *Litvinov v. UnitedHealth Grp. Inc.*, No. 13-8541, 2014 WL

1054394, at *3 (S.D.N.Y. Mar. 11, 2014) (compelling arbitration where employee

"acknowledged that she received and reviewed" employer's arbitration policy).

Cowen's offers of employment and compensation awards to Plaintiff constitute valid

consideration for his assent to the Agreements and their arbitration provisions.  *Gonder v. Dollar

Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015) (compelling arbitration where

plaintiff signed arbitration agreement as part of his offer of employment); *Etienne v. Barclays

Bank*, No. 18-5168, 2019 WL 3325841, at *2 (S.D.N.Y. July 24, 2019) ("Courts consistently

compel arbitration of employment claims pursuant to valid arbitration agreements in offer

letters." (collecting cases)).  Additionally, Cowen's mutual agreement to arbitrate all disputes it

may have against Plaintiff is ample consideration in and of itself for Plaintiff's agreement.

*Marciano*, 14 F. Supp. 3d at 337 (compelling arbitration of plaintiff's claims after finding that

the arbitration agreement contained "sufficient consideration because . . . it mutually binds both

parties to submit claims exclusively to arbitration").

It is undeniable that Plaintiff—who agreed ***three separate times*** to valid Agreements

containing arbitration provisions—assented to litigate the Complaint's claims outside of court, in

arbitration.

2.      **Plaintiff's Arbitration Agreements Cover The Causes of Action (i.e. Dispute) Alleged In The Complaint, All Of Which Are Arbitrable.**

Where a valid arbitration agreement exists that covers the dispute, a district court **must** enforce the agreement and compel arbitration of that dispute. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court"); *Daly v. Citigroup Inc.*, 939 F.3d 415, 418 (2d Cir. 2019) (affirming district court decision compelling to arbitration the plaintiff's discrimination and retaliation claims under federal, state, and local laws). Here, Plaintiff's employment-related statutory claims fall squarely within the scope of his Agreements. The Agreements cover "[a]ny disputes arising out of or relating to [Plaintiff's] employment or the termination of [his] employment" with Cowen, and expressly include "statutory discrimination, harassment, and retaliation claims under federal, state and local law." McAdams Decl., Ex. B ¶ 17, Ex. C § 2.14, Ex. D § 2.14.

There can be no dispute that Plaintiff was a FINRA-registered "associated person" of Cowen. *See* FINRA Rules 1011, 13100; McAdams Decl. ¶¶ 4, 7, Ex. E. As a securities broker-dealer, Cowen too is registered with FINRA as a Member firm. FINRA Rules 160(b)(10), 13100; McAdams Decl. ¶ 4. Accordingly, as both parties were FINRA members during Plaintiff's employment, Plaintiff was bound to file any claim related to an employment dispute with Cowen solely in that forum – an obligation known to Plaintiff prior to this filing. *See* FINRA Rule 13200(a); *Hawkins v. Toussaint Capital Partners, LLC*, 2010 WL 2158332, at *4 (S.D.N.Y. May 27, 2010) (finding that former employee's Form U-4 and FINRA Rule 13200(a) required plaintiff to arbitrate his employment-related claims before FINRA).

Moreover, even if Plaintiff were to contend that the "statutory" claims he has raised were not covered by the arbitration clause in his Form U-4, the Agreements make clear that ***all*** of the

claims asserted in the Complaint must be arbitrated.  For example, all three Agreements state that

if Plaintiff is "not registered or [is] not subject to FINRA's jurisdiction," then all employment-

related disputes must be "submitted to and resolved . . . by the American Arbitration Association

("AAA")" pursuant to the AAA's arbitration rules."  McAdams Decl., Ex. B ¶ 17, Ex. C § 2.14,

Ex. D § 2.14.  These unambiguous, pre-dispute, mandatory arbitration agreements have

repeatedly been validated and enforced by New York courts.  *See, e.g., Rusciano v. Oppenheimer

& Co., Inc.*, 2014 WL 1677133, at *3 (S.D.N.Y. Apr. 25, 2014) (compelling FINRA arbitration

of plaintiff's statutory employment discrimination claims because FINRA "permits member

organizations to enter into separate, private arbitration agreements with their employees that

cover statutory employment discrimination claims"); *Hawkins*, 2010 WL 2158332, at *1

(requiring FINRA arbitration of statutory retaliatory discharge claim); *Melchior v. N.Y. Life Ins.

Co., et al.*, 2019 WL 652557, at *1 (S.D.N.Y. Feb. 15, 2019) (enforcing arbitration agreement

that required arbitration before FINRA or, alternatively, the AAA, as to employment-related

claims); *Rollins v. Goldman Sachs & Co. LLC*, 2019 WL 2754635, at *1 (S.D.N.Y. July 2,

2019).

Plaintiff cannot dispute in good faith that the claims alleged here are encompassed within

the scope of his T&C Agreement and 2019 and 2020 RSU Agreements, which all preclude

litigation of such claims in court.  Consistent with the Agreements' terms, the Court should

compel all of Plaintiff's claims to FINRA arbitration or, if necessary in the alternative,

arbitration before AAA.

### 3.     Any Disputes Regarding The Arbitrability Of Plaintiff's Claims Are Delegated To The Arbitrator.

To the extent Plaintiff challenges the arbitrability of any of his claims in this case, an

arbitrator (and not the Court) must decide whether such claims are arbitrable.  The Supreme

Court has recognized that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Plaintiff's agreements clearly and unmistakably delegate questions of arbitrability to the arbitrator. As described above, Plaintiff's agreements provide that "***[a]ny and all disputes*** with [Cowen] ***arising out of or relating to this Agreement or to [Plaintiff's] employment*** will be submitted to and resolved exclusively by [FINRA] in accordance with its rules," or alternatively, by the AAA pursuant to its Employment Arbitration Rules and Mediation Procedures. McAdams Decl., Ex. B ¶ 17, Ex. C § 2.14, Ex. D § 2.14 (emphasis added).

When parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (citations omitted). Moreover, the Second Circuit has found that where agreements incorporate the FINRA and/or AAA Rules at issue here, that evidences the parties' clear and unmistakable intent to arbitrate questions of arbitrability. *See, e.g.*, *Alliance Bernstein Investments Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 127 (2d Cir. 2006) (holding that NASD Rule 10324, now FINRA Rule 13413, "clearly and unmistakably evinces an intent to submit any disputes over the interpretation of the Code rules to arbitration," such as whether claim was arbitrable under FINRA rules); *Contec*, 398 F.3d at 208 (incorporation of the AAA's Commercial Arbitration Rules, including Rule 7(a), "serves as clear and unmistakable evidence of the parties' intent to delegate" arbitrability to the arbitrator);[1] *Alderson v. DeVere USA, Inc.*,

---

[1] Although *Contec* involved the AAA's Commercial Arbitration Rule 7(a) regarding jurisdiction, the Employment Arbitration Rules contain an identical Rule 6(a) applicable here. *See Alderson*, 2018 WL 3756451, at *2.

2018 WL 3756451, at \*2 (S.D.N.Y. July 24, 2018) (relying on *Contec* and finding parties'

incorporation of AAA Employment Arbitration Rules evidenced intent "to delegate arbitrability

issues to the arbitrator").

As such, if there is any dispute regarding issues of arbitrability relating to Plaintiff's

claims in this case (which there should not be), that dispute must be referred to FINRA or, if

necessary, the AAA, to decide arbitrability.

### C.     The Court Should Stay These Proceedings Pending Arbitration.

Because all of Plaintiff's asserted claims in the Complaint should be compelled to

arbitration, the Court should stay these proceedings pending the resolution of the parties'

arbitration.  *Katz v. Cellco Partnership*, 794 F.3d 341, 344 (2d Cir. 2015) (Section 3 of the FAA

mandates that the Court issue a stay of proceedings when "all of the claims in an action have

been referred to arbitration" and a stay is requested).

## IV.     CONCLUSION

Plaintiff entered into multiple valid, binding, and enforceable agreements to arbitrate

each of his claims in the Complaint.  Based on the foregoing, Cowen respectfully requests that

the Court: (1) compel all of Plaintiff's claims to arbitration before FINRA or, if necessary, before

the AAA; and (2) stay this matter pending the conclusion of the arbitration.

-11-

Dated:  July 30, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:      /s/ *Christopher A. Parlo*
         Christopher A. Parlo
         Thomas A. Linthorst
         Jason J. Ranjo

101 Park Avenue
New York, NY 10178
Tel: 212.309.6000
Fax: 212.309.6001

*Attorneys for Defendant*