UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

KEVIN ROLLAG,

                                    Plaintiff,

                    v.                                    No.  20-CV-5138 (RA)

COWEN INC., COWEN AND COMPANY,
LLC, GAVIN O'REILLY, and SCOTT            OPINION & ORDER
LEMONE, *in their individual and
professional capacities*,
                                    Defendants.

RONNIE ABRAMS, United States District Judge:

        Plaintiff Kevin Rollag brings this action alleging that his former employers Defendants Cowen

Inc. and Cowen and Company, LLC (together, "Cowen" or the "Company") and supervisors

Defendants Gavin O'Reilly and Scott Lemon (collectively, "Defendants") unlawfully discriminated

and retaliated against him in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et

seq*. ("FMLA"), Section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("Sarbanes-

Oxley"), and New York State Human Rights Law.  Now before the Court is Defendants' motion to

compel arbitration of all claims save the one that arises under Sarbanes-Oxley.  For the reasons that

follow, the motion is granted.

## BACKGROUND

        The following facts are drawn from Plaintiff's Amended Complaint ("Complaint"), Dkt. 38,

and from admissible evidence submitted by the parties in pleadings and affidavits, as is permitted in

deciding a motion to compel arbitration.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d

Cir. 2016).

## I.     Factual Background

Plaintiff Kevin Rollag worked for the Investment Banking Division at Defendant Cowen and Company, LLC, in New York, New York from May 2018 until his termination in June 2020.  *See* Compl. ¶¶ 25, 168; *see* Dkt. 13, Declaration of Rebecca McAdams in Support of Defendants' Motion to Compel Arbitration and Stay This Action ("McAdams Decl.") ¶ 3.  Plaintiff was registered with the Financial Industry Regulatory Authority as a broker-dealer.  *Id.* ¶ 4.  Defendants Cowen Inc., a Delaware corporation, and Cowen and Company, LLC, a Delaware foreign limited liability company, have their principal place of business in New York, New York.  Compl. ¶ 26.  Defendant Gavin O'Reilly is California resident, while Defendant Scott Lemone is a resident of Massachusetts.  *Id.* ¶¶ 27-28.  Both were both Managing Directors at Cowen who supervised the employment of Plaintiff. *See id.*

Upon joining Cowen, Plaintiff signed an offer letter and terms of conditions of employment, both dated April 17, 2018.  *See* Dkt. 13-1, McAdams Decl., Ex. A ("Offer Letter"); Dkt. 13-2, McAdams Decl., Ex. B ("Terms & Conditions").  The Offer Letter contains a provision entitled "Choice of Law," which provides that "any claim, controversy or dispute arising under or related to the Offer Letter; your employment relationship with the Company; and/or the interpretation of the rights and duties of the parties will be governed by the laws of the State of New York."  Offer Letter ¶ 5.  The Terms & Conditions contain a provision entitled "Arbitration" that provides, in relevant part:

> 17. <u>Arbitration</u>.  Any disputes arising out of or relating to your employment or the termination of your employment will be submitted to and resolved exclusively by Financial Industry Regulatory Association in accordance with its rules, unless you are not registered or are not subject to FINRA's jurisdiction, then by the American Arbitration Association ("AAA") pursuant to the AAA's Employment Rules and Mediation Procedures. . . . This arbitration provision applies to, but is not limited to, statutory discrimination, harassment, and retaliation claims under federal, state and local law.
>
> ....

> This Arbitration provision does not apply to: (a) a claim for injunctive relief permitted under these Terms and Conditions of Employment, for which jurisdiction shall be reserved in the federal and/or state courts in New York County, with the parties consenting to personal jurisdiction; (b) any claim arising under Sarbanes-Oxley; and (c) claims prohibited by law from being arbitrated.

Terms and Conditions ¶ 17.

On April 15, 2019 and April 26, 2020, as part of his compensation package with Cowen, Plaintiff entered into Restricted Stock Unit and Deferred Cash Award Agreements (the "Stock Agreements"). McAdams Decl. ¶ 6. Each of these Stock Agreements contains an arbitration clause that states, in relevant part:

> Any and all disputes with the Company, the Employer, or any Affiliate arising out of or relating to this Agreement or to [Plaintiff's] employment will be submitted to and resolved exclusively by the Financial Industry Regulatory Association ("*FINRA*") in accordance with its rules, unless [Plaintiff] is not registered or is not subject to FINRA's jurisdiction, then by the American Arbitration Association ("*AAA*") pursuant to the AAA's Employment Arbitration Rules and Mediation Procedures. . . . This arbitration provision applies to, but is not limited to, statutory discrimination, harassment, and retaliation claims under federal, state and local law.

Dkt. 13-3 ¶ 2.14(a); Dkt. 13-4 ¶ 2.14(a). Additionally, both Stock Agreements exempt claims arising under Sarbanes-Oxley from arbitration and contain restrictive covenants that purport to limit Plaintiff's ability to solicit employees or engage in competitive activity. *See id.*

In late 2019, Plaintiff began raising concerns to Defendant O'Reilly and others at the Company about what he viewed as the improper inclusion in a financing deal of an investor who was "a Russian/Israeli oligarch banned from Canada for 19 years, and reputed to be engaged in money laundering and arms dealing." *See* Compl. ¶¶ 6, 45. On multiple occasions, O'Reilly told Plaintiff to set aside his concerns. *Id.* ¶¶ 52, 57. In January 2020, a month after he first raised concerns, Plaintiff received an uncharacteristically "aggressive" and critical year-end review, and a lower-than-normal bonus. *Id.* ¶¶ 100-107, 119.

Beginning in early March 2020, O'Reilly allegedly engaged in a pattern of hostile, intimidating, and aggressive conduct toward Plaintiff. *Id.* ¶ 124. On March 6, 2020, Plaintiff's wife

was suddenly hospitalized with pregnancy complications and gave birth to the couple's first child about a month earlier than the expected due date.  *Id.* ¶ 126.  Plaintiff alleges that O'Reilly became angry at him for taking an unexpectedly early parental leave and, at one point, publicly and aggressively expressed his antagonism on a Zoom call.  *See id.* ¶¶ 126-140.  Plaintiff subsequently sent an email to O'Reilly and another managing director that memorialized his reservations about the financing deal. *Id.* ¶¶ 141-142.  Thereafter, O'Reilly and others stopped discussing the deal in front of Plaintiff or on electronic communications that he would receive.  *Id.* ¶ 95.  After Plaintiff contacted Defendant Lemone to express concerns about both the deal and O'Reilly's conduct, the Company stopped staffing Plaintiff on new deals.  *Id.* ¶¶ 147, 161-162.  On June 4, 2020, Cowen "summarily terminated" Plaintiff.  *Id.* ¶ 168.

## II.   Procedural Background

Plaintiff filed the instant action on July 6, 2020 alleging discrimination on the basis of his parental status, and retaliation on the basis of protected activity, in violation of the FMLA and the New York State Human Rights Law.   He simultaneously filed a complaint with the Occupational Safety and Health Administration ("OSHA") of the United States Department of Labor alleging whistleblower retaliation in violation of Section 806 of Sarbanes-Oxley, in accordance with the procedure set out in that statute's implementing regulations.  *See* Compl. ¶¶ 16, 178; 29 C.F.R. § 1980.103.  Defendants filed the instant motion to compel arbitration and stay this action on July 30, 2020.  Dkt. 12.

On January 8, 2021, having received no final decision from OSHA, Plaintiff moved to supplement his complaint with allegations that Defendants violated Sarbanes-Oxley.  Dkt. 35; *see* 29 C.F.R. § 1980.114 (permitting Sarbanes-Oxley complainants to "bring an action . . . for de novo review in the appropriate district court" if OSHA has not issued a final decision within 180 days of the filing of the complaint).  The Court granted leave to amend, and Plaintiff filed the operative

Amended Complaint on January 20, 2021.  Dkt. 38.  On February 2, 2021, Defendants informed the Court that they rely on their previously filed motion to compel and do not seek to compel arbitration of Plaintiff's claim under Sarbanes-Oxley.  Dkt. 39.  Oral argument was held on March 2, 2021.

The parties agree that the Offer Letter, Terms & Conditions, and Stock Agreements (collectively, the "Agreements") purport to mandate the arbitration of Plaintiff's claims for retaliation and discrimination under the FMLA and state law.  They dispute, however, whether such claims may be arbitrated in light of NY CPLR § 7515, a recently enacted and amended statute that prohibits parties from contracting to mandatory arbitration of discrimination claims.  The parties also disagree as to whether the threshold issue of arbitrability should be decided in arbitration, or by the Court.

## LEGAL STANDARD

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks omitted).  The Court may thus consider all relevant admissible evidence contained in pleadings and affidavits, and must draw all reasonable inferences in favor of the non-moving party.  *Id.*

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), "requires courts to enforce covered arbitration agreements according to their terms."  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019).  The FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983).  Covered agreements include those "evidencing a transaction" involving foreign or interstate commerce.  *See* 9 U.S.C. §§ 1-2.

The FAA reflects a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone*, 460 U.S. at 24. Accordingly, while Section 2 of the FAA contains a saving clause that permits courts to declare

arbitration agreements unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, the Supreme Court has clarified that it is limited in effect. The saving clause "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Accordingly, "state law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA." *Lamps Plus, Inc.*, 139 S. Ct at 1415 (quoting *Concepcion*, 563 U.S. at 352). "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Concepcion*, 563 U.S. at 341 (holding that the FAA preempted a California law that classified as unconscionable most collective-arbitration waivers in consumer contracts).

## DISCUSSION

As an initial matter, neither party disputes that the Agreements are subject to the FAA. They plainly "involv[e]" foreign and interstate commerce. *See* 9 U.S.C. §§ 1-2. The international transaction at the heart of this dispute makes clear that Plaintiff's employment involved commerce with foreign nationals and foreign banks. *See* Compl. ¶¶ 1, 6. Cowen is a Delaware corporation headquartered in New York with offices around the country, while Defendants O'Reilly and Lemon supervised Plaintiff's New York-based work from California and Massachusetts. *See* Dkt. 27, Supplemental Declaration of Rebecca McAdams in Further Support of Defendants' Motion to Compel Arbitration and Stay This Action ¶¶ 2-3; *see also Graphic Scanning Corp. v. Yampol,* 850 F.2d 131, 133 (2d Cir. 1988) (finding that FAA applied to employment contract in part because petitioner was a Delaware corporation headquartered in New Jersey).

I.      **The Court Should Decide the Issue of Arbitrability**

Defendants argue that the Agreements' incorporation of the FINRA Code of Arbitration Procedure for Industry Disputes (the "Code")—and AAA rules as an alternative—demonstrates that the parties intended the issue of arbitrability to be decided by an arbitrator in the first instance, rather than the Court.   Mot. at 8-9.   Plaintiff insists that the incorporation of FINRA rules does not demonstrate the requisite intent to delegate that threshold issue.   Finding the Agreements ambiguous at best on that question, and drawing all inferences in favor of Plaintiff as the non-moving party, the Court concludes that it should resolve the issue.   *See Meyer*, 868 F.3d at 74.

The FAA creates a general presumption that courts should resolve the question of arbitrability. *See, e.g. Contec Corp. v. Remote Sol., Co*., 398 F.3d 205, 208 (2d Cir. 2005).   In accordance with that presumption, the Second Circuit has held that "'the issue of arbitrability may only be referred to the arbitrator if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.'"  *Id.* (quoting *Bell v. Cendant Corp*., 293 F.3d 563, 566 (2d Cir. 2002) (emphasis in original)).   Where "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec Corp*., 398 F.3d at 208 (holding that incorporation of AAA rules evidenced requisite intent).

Each of the Agreements, with slight variations not relevant here, provides that any disputes arising out of Plaintiff's employment "will be submitted to and resolved exclusively by [FINRA] in accordance with its rules."  *See* Terms & Conditions ¶ 17;  Stock Agreements ¶ 2.14(a).  If "[Plaintiff] is not registered or is not subject to FINRA's jurisdiction," however, the AAA's employment arbitration rules and mediation procedures shall apply as an alternative.  *See* Terms & Conditions ¶ 17; Stock Agreements ¶ 2.14(a).  Defendants maintain that this incorporation of FINRA and AAA

rules is sufficient evidence of intent to delegate, citing *Contec Corp.* and *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 126 (2d Cir. 2006), as support.  Finding both cases distinguishable, the Court disagrees.

Unlike the AAA rules, which provide that "'[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement,'" *Contec Corp.*, 398 F.3d at 208 (quoting AAA Rule R-7(a)), the FINRA Code "does not clearly and unmistakably provide for all issues of arbitrability to be arbitrated," *Alliance Bernstein*, 445 F.3d at 126 (evaluating NASD Rule 10324, now FINRA Rule 13413).  The relevant FINRA rule is more circumscribed than its AAA counterpart, stating only that "[t]he [arbitration] panel has the authority to interpret and determine the applicability of all provisions *under the Code*."  FINRA Rule 13413 (emphasis added).  Accordingly, the *Alliance Bernstein* court found that the parties had delegated arbitrability in that instance on the basis that the particular arbitrability dispute—whether the Code's provision mentioning "employment discrimination . . .  in violation of a statute" encompassed a claim under Sarbanes-Oxley—hinged on interpretation of the FINRA Code. 445 F.3d at 126.

Here, by contrast, the underlying dispute as to whether NY CPLR § 7515 applies to the Agreements does not implicate the FINRA Code.  FINRA Rule 13413 therefore does not apply.  No other FINRA rule delegates to its arbitration panel determinations about the general scope or validity of an arbitration agreement.  As a result, the Agreements' incorporation of the Code does not clearly evince the parties' intent to delegate the arbitrability question at issue here.  The Court reaches the same conclusion regarding the Agreements' reference to the AAA rules.  Pursuant to each Agreement, AAA rules shall apply to a dispute arising out of Plaintiff's employment only if Plaintiff is not registered with FINRA or subject to its jurisdiction.  Evidence submitted by Defendants demonstrates that Plaintiff is in fact registered with FINRA.  *See* McAdams Decl. ¶ 4, Ex. E.  The AAA rules are

therefore inapplicable.   Nor can the Court infer clear and unmistakable evidence of an intent to delegate from their inclusion in the Agreements as an alternative body of rules, applicable to a hypothetical scenario that has no bearing on the facts of this case.

In accordance with the presumption created by the FAA, the Court will therefore resolve the issue of arbitrability.

## II.        The FAA Displaces NY CPLR § 7515 in This Instance

Plaintiff opposes the motion to compel arbitration on the grounds that the Agreements' provisions mandating arbitration are nullified by NY CPLR § 7515, which prohibits the contractual arbitration of discrimination claims.   While Plaintiff claims that § 7515 applies to the Agreements by virtue of the choice-of-law provision, Defendants maintain that it is displaced by the FAA in this instance.   The Court agrees with Defendants.

The Supreme Court has held that any state law that "prohibits outright the arbitration of a particular type of claim . . . . is displaced by the FAA." *Concepcion*, 563 U.S. at 341.   NY CPLR § 7515 is a paradigmatic example of such a law, and Plaintiff does not contend otherwise.   Nor could he.   The statute prohibits any "written contract, entered into on or after [July 11, 2018][1]" from containing "any clause or provision .   . . which requires as a condition of the enforcement of the contract or obtaining remedies under the contract that the parties submit to mandatory arbitration to resolve any allegation or claim of discrimination," and renders "null and void" any provisions that contain such a prohibited clause, "[e]xcept where inconsistent with federal law."   NY CPLR § 7515(b).   The law's outright prohibition on the arbitration of discrimination claims is plainly

---

[1] Defendants also argue that NY CPLR § 7515 cannot apply to the Agreements because the statute was enacted—and amended to encompass discrimination in addition to sexual harassment—after the Agreements were signed.   The second Stock Agreement was signed on April 26, 2020, however, well after the most recent amendment to the statute on October 11, 2019.   As Defendants themselves point out, "'[u]nder New York law, it is recognized that a later contract regarding the same subject matter supersedes the prior contract." Mot. at 5 (quoting *Cupples v. Valic Fin. Advisors, Inc*., No. 13-CV-4501 JS AKT, 2014 WL 4662272, at *4 (E.D.N.Y. Sept. 18, 2014)).   Accordingly, the Court assumes without deciding that NY CPLR § 7515 applies, according to its own terms, to the arbitration provisions at issue.

inconsistent with the FAA and the Supreme Court's interpretation of that federal law.  Accordingly, NY CPLR § 7515 is displaced by the FAA in this case.

The Court finds support for this conclusion in two recent opinions from this District.  In *Latif v. Morgan Stanley & Co. LLC*, for example, Judge Cote concluded that § 7515 was displaced by the FAA because it is "not a ground as exists at law or in equity for the revocation of any contract . . . but rather a state law prohibiting outright the arbitration of a particular type of claim."  No. 18CV11528 (DLC), 2019 WL 2610985, at *3 (S.D.N.Y. June 26, 2019) (internal quotation marks and alterations omitted).  Similarly, in *Whyte v. WeWork Companies, Inc.*, Chief Judge McMahon stated that "[t]he Supreme Court has specifically forbidden state legislatures from creating exceptions to the FAA like the one embodied in CPLR § 7515."  No. 20-CV-1800 (CM), 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020).

Plaintiff's attempts to distinguish these cases are entirely without merit.  Plaintiff notes that "other cases in which CPLR 7515 was found to be preempted by the FAA involved contracts with arbitration language that specifically invoked the FAA and its application to their terms."  Opp. at 2. Although that fact may be true, it is irrelevant because the FAA applies to "any arbitration agreement within the coverage of the Act."  *Moses H. Cone*, 460 U.S. at 24.  Neither party disputes that the Agreements are covered within the meaning of the FAA.  Plaintiff points to no authority for the proposition that the FAA applies only those contracts that expressly reference the statute.

Plaintiff further contends that the Agreements' carveout for "claims prohibited by law from being arbitrated," *see, e.g.,* Terms & Conditions ¶ 17, in combination with the choice-of-law provision, demonstrates the parties' intent to incorporate New York's statutory prohibition on the arbitration of discrimination claims, thereby requiring the Court to apply § 7515 in spite of the FAA. That argument is similarly misplaced.  First, it ignores that the Agreements elsewhere state that the "arbitration provision applies to, but is not limited to, statutory discrimination, harassment, and

retaliation claims under federal, state and local law," *id.*, seemingly contradicting Plaintiff's interpretation of the provisions.  That contradiction prevents the Court from reading into the Agreements any specific intent to incorporate § 7515.  Indeed, as Defendants rightly noted at oral argument, if the parties had wished to exempt discrimination claims from arbitration, they could have done so.  Second, and more importantly, the Court rejects Plaintiff's contention that the choice-of-law provision exempts the Agreements from the requirements of the FAA.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62 (1995) ("When a court interprets [choice-of-law] provisions in an agreement covered by the FAA, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."); *see also DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54-58 (2015) (holding that choice-of-law provision in arbitration agreement incorporated only "*valid* state law" and not state law preempted by the FAA).  Parties cannot contract their way out of the FAA's displacement of state-law prohibitions on the arbitration of particular types of claims.   Simply put, NY CPLR § 7515 is displaced by the FAA in any "arbitration agreement within the coverage of the Act."  *Moses H. Cone*, 460 U.S. at 24.

Having determined that New York's prohibition on the arbitration of discrimination claims is displaced by the FAA in this instance, the Court finds that the arbitration provisions in the Agreements cover Plaintiff's claims in this case.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is granted.   As Defendants have requested to stay this action pending arbitration, the FAA mandates that the Court stay those claims that have been referred to arbitration, namely the causes of action arising under the FMLA and New York State Human Rights Law.  *See* 9 U.S.C. § 3; *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 596 (2015).   The decision whether to allow

Plaintiff's nonarbitrable claim under Sarbanes-Oxley to proceed, or to stay it pending arbitration of Plaintiff's remaining claims, is a decision within the Court's discretion.  *See Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 856 (2d Cir. 1987); *Chang v. United Healthcare*, No. 19-CV-3529 (RA), 2020 WL 1140701, at *5 (S.D.N.Y. Mar. 9, 2020).

No later March 17, 2021, the parties shall submit a joint letter indicating whether Plaintiff intends to arbitrate his FMLA and state-law claims and, if so, outlining the parties' respective positions on whether to stay Plaintiff's Sarbanes-Oxley claim pending resolution of that arbitration. The Clerk of Court is respectfully directed to terminate items 11 and 14 on the docket.

SO ORDERED.

Dated:      March 3, 2021
            New York, New York

_____
Ronnie Abrams
United States District Judge